IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JIMMY ZAVALA,

                    Plaintiff,

        v.                                              OPINION and ORDER

JOLINDA WATERMAN, DANIEL WINKLESKI,
MARK KARTMAN, CARRIE SUTTER, BRIAN KOOL,                18-cv-331-jdp
SONYA ANDERSON, SANDRA MCARDLE,
and LORI ALSUM,[1]

                    Defendants.

---

Plaintiff Jimmy Zavala, appearing pro se, is an inmate at Wisconsin Secure Program Facility. He alleges that defendant prison officials failed to properly treat him after he injured his back working at his prison job. He brings claims under the Eighth Amendment and Wisconsin negligence law.

All of the defendants except Sandra McArdle are represented by the state, and they have filed a motion for summary judgment. Dkt. 76. I will refer to these defendants as the "state defendants." Defendant McArdle has filed her own motion for summary judgment. Dkt. 87. Those motions are fully briefed. Zavala has filed motions for sanctions against defendants, for appointment of counsel, and to amend his complaint.

For reasons stated below, I will deny plaintiff's various motions. After considering the parties' summary judgment materials, I conclude that there are no genuine disputes of material fact regarding Zavala's medical treatment, and that no reasonable jury could conclude from the extensive treatment Zavala received that any of the defendants were deliberately indifferent to

---

[1] I have amended the caption to include defendants' first names.

his back problem. I will grant defendants' motions for summary judgment regarding Zavala's Eighth Amendment claims, and I will decline to continue exercising supplemental jurisdiction over Zavala's state-law claims.

PRELIMINARY MATTERS

**A. Motions to amend complaint**

I previously denied Zavala's requests to amend or supplement his complaint to add new claims against several of the defendants for knowingly sending him to an off-site MRI scan despite knowing that he has metal rods in his back; I concluded that Zavala unduly delayed in making those requests. Dkt. 106, at 1–2. Zavala also asked the court to include the Wisconsin Injured Patients and Families Compensation Fund as a defendant, because it "is the supplemental insurer for defendants." Dkt. 94. The state defendants responded that is took no position on the motion. I gave defendant McArdle a final opportunity to respond to the motion herself; she responded that she also took no position on the motion. Dkt. 110.

Zavala has filed another motion to amend his complaint, raising issues similar to his earlier motions discussed above. Dkt. 130. He seeks to amend his amended complaint to elaborate on claims about being sent to an MRI and what he believes were injuries suffered because of it. But his amended complaint is not the operative complaint; as stated above, I *denied* his request to amend his complaint. His new proposed allegations have the same problems as his earlier attempt to amend, so I will deny his new motion to amend as well.

Zavala would also like to amend his complaint to add as a defendant Maxim Physician Resources, McArdles's employer, so that he can hold it liable under a *respondeat superior* theory on his state-law negligence claims against McArdle. But this request and his earlier request to

add the Wisconsin Injured Patients and Families Compensation Fund are rendered moot by this summary judgment opinion. These proposed new defendants are perhaps relevant to his state-law negligence claims, but I am relinquishing jurisdiction over those claims because I am granting summary judgment to defendants on all of his federal claims. So I will deny his motions to amend his complaint concerning the proposed new defendants.

## B. Motion for sanctions

Zavala filed a motion to dismiss defendants McArdle and Waterman because he believes that they perjured themselves by contradicting each other about when McArdle worked at WSPF, Dkt. 104, which I construed as a motion for entry of judgment against those defendants as a sanction. I denied that motion, stating that at that point in the proceedings, Zavala had not submitted enough evidence to prove that such an extreme sanction was appropriate. *See* Dkt. 106, at 4–5. Zavala had to yet submit his own response to either of the summary judgment motions, so it was unclear what material facts the parties were disputing, or whether defendants' versions were actually inconsistent. *Id.* at 5. I told Zavala that he could renew his motion along with his summary judgement response.

Defendants McArdle and Waterman each filed motions to supplement their proposed findings of fact to explain the discrepancies in defendants' proposed findings, Dkt. 109 and Dkt. 120, which the court granted. Zavala opposed those additional findings, and I take him to be renewing his motion for sanctions.

After reviewing all of the parties' materials, I conclude that defendants' initially contradictory accounts are not a reason to sanction them. Waterman initially said that on May 19, 2016, McArdle ordered an MRI for Zavala and referred him to physical therapy. Dkt. 79, at 13, ¶ 51. But McArdle stated that her first day at WSPF "on this assignment" was January

1, 2017, Dkt. 91, at 5, ¶ 35, and she did not mention the May 19, 2016 order discussed in Waterman's declaration. Zavala seized on this discrepancy.

In their supplemental materials, Waterman and McArdle both revise their version of events. McArdle now says that she indeed worked ten shifts at WSPF in May and June 2016 on a part-time basis, and that her first full-time day at WSPF was January 1, 2017. Waterman says that she was incorrect in saying that McArdle ordered the MRI or referred Zavala for physical therapy in May 2016. Rather, an outside provider made those orders and McArdle *approved* them. Defendants' new accounts are consistent with each other and with the medical record for the May 19, 2016 order, which includes what appears to be McArdle's signature. Dkt. 79-1, at 40.

In denying Zavala's original motion, I stated that he "should be aware that findings of perjury are rare: inconsistences in testimony are often a result of fallible human memory or other mistakes, not perjury." Dkt. 106, at 5. I am persuaded that the discrepancy here was simply the result of a mistake or McArdle's faulty memory in recalling her work at WSPF. There is no reason to think that either McArdle or Waterman intentionally lied in their original declarations, nor is it clear what they would have stood to gain by doing so. I will deny Zavala's renewed request for sanctions.

## C. Recruitment of counsel

Zavala renews his previously denied request for recruitment of counsel to assist him. Dkt. 127. In my December 14, 2018 order, I denied his motion for recruitment of counsel and I gave him another chance to file materials opposing defendants' summary judgment motions after he missed his deadline. Dkt. 106, at 4–5. I stated that Zavala had proven capable of filing understandable and reasoned motions, so he should be able to set out his version of events in

his summary judgment opposition materials. *Id.* at 4. I also stated that without seeing Zavala's summary judgment responses, it was impossible to tell whether the case was truly too complex for him to litigate. *Id.* at 4–5.

Now that I have the benefit of seeing Zavala's summary judgment responses, I will deny his renewed motion for the assistance of counsel. Zavala's responses are not perfect, but I do understand his version of events and the legal arguments he is making.

For instance, Zavala makes many fruitless objections to defendants' proposed findings of fact citing to medical records, on the ground that the defendant citing a particular record did not have knowledge of the events contained within the record. But I do not take him to genuinely dispute the authenticity of his medical records—he relies on the records himself for many of his responses. And he generally does not actually dispute the events described in the records; he just disagrees about what legal conclusions can be drawn from them. I will disregard his objections to his medical records unless he genuinely disputes the contents of a particular finding of fact.

Ultimately, the problem for Zavala is not that he is unable to understand the complexity of the case, but that the undisputed facts fail to show that defendants acted with deliberate indifference toward his medical needs.

## D. Motion to stay deadlines

The two sets of defendants have filed a joint motion to stay the trial-related deadlines pending resolution of their summary judgment motions. Because this opinion and order resolved the summary judgment motions, I will deny defendants' motion as moot.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials and are undisputed unless otherwise noted. As stated above, I will disregard many of Zavala's objections to defendants' proposed findings of fact recounting information from his medical records, and I will consider those proposed findings as undisputed.

## A. Parties

Plaintiff Jimmy Zavala is an inmate incarcerated at Wisconsin Secure Program Facility (WSPF). Most of the defendants were Department of Corrections employees: Jolinda Waterman was the health services manager, Sonya Anderson was a nurse clinician, and Lori Alsum was a nursing coordinator. Several of the defendants sat on the "Special Needs Committee," a rotating group of medical and non-medical officials that decides prisoner requests for "special needs" or "comfort" items: Anderson, Waterman, Deputy Warden Daniel Winkleski, Security Director Mark Kartman, unit manager Brian Kool, and financial program supervisor Carrie Sutter. The final defendant, Sandra McArdle, is a nurse practitioner who worked for a company that was contracted to provide medical services at WSPF.

## B. Zavala's medical treatment

About 20 years ago, Zavala badly injured his back. He had surgery that resulted in metal hardware being placed on his lower spine. Zavala also has a bullet lodged near his tailbone.

On March 1, 2016, Zavala was seen by an outside nurse practitioner by "telemed." Zavala said that he was experiencing pain and numbness in his left thigh and lower back. On March 26, 2016, Zavala injured his back lifting a heavy object. A non-defendant nurse gave Zavala "muscle rub" and acetaminophen. Zavala was seen several days later by non-defendant Nurse Practitioner Tanya Bonson, who ordered him an anti-inflammatory injection of

Solu-Medrol that he received the next day. Bonson also prescribed Zavala analgesic rub, a muscle relaxant, tramadol (narcotic pain medication), and a "safety belt" for his back, although Zavala says that he did not receive the belt. Bonson also told Zavala to continue taking acetaminophen.[2]

In May, Zavala saw an outside nurse practitioner by telemed. She ordered Zavala an MRI and physical therapy, and to be assessed for a transcutaneous electrical nerve stimulation ("TENS") unit. McArdle reviewed those orders and signed off on them.

Zavala began physical therapy on June 14, 2016. A week later, the therapist approved Zavala for a TENS unit. On July 20, 2016, Zavala submitted a health service request ("HSR") stating that security staff members were interfering with his medical treatment by allowing him only 20 minutes to use a TENS Unit. Waterman followed up on a response by another nurse, telling Zavala that the TENS unit is provided during medication pass and available for only 20 minutes under DOC policy.

Zavala had an MRI on July 26, 2016. But ultimately the results were "non-diagnostic" because the imaging was distorted by the surgical device in Zavala's back. Bonson noted, "I do not see any indication that going to see this neurosurgeon would change anything at this point."

---

[2] In his response to defendant McArdle's proposed findings of fact, Zavala says that McArdle's declaration is inadmissible because he "did not receive pain medication to [relieve] his back pains" and that he "did not receive any treatments within." Dkt. 114, at 4–5. It is unclear whether Zavala means that he did not receive pain medication at all or that he did not receive *adequate* medication. If he means that he did not receive any of the prescribed mediation, that contradicts his responses to the state defendants' proposed findings and the medical records showing the dates he received tramadol. In any event, he does not allege that he told the named defendants about the failure to be proved medication, so the only reasonable inference from the proposed findings is that they thought that Zavala was being treated with the medications listed in his medical records.

I take Zavala to be saying that he was able to see imaging that showed that the surgical device in his back was broken. Zavala believes that this caused him additional pain.

Also, on July 26, Zavala reported to the physical therapist that he was doing better and that he was able to perform his daily activities without thoracic pain. The physical therapist noted that Zavala had met his therapy goals and discontinued his physical therapy with the instruction to continue with his home exercise program.

A nurse ordered x-rays in early August 2016, which showed a "normal lumbar spine series," mild osteoarthritis of the left hip, and "multiple metallic foreign bodies overlying the left pelvis and in the soft tissues left lateral abdomen." Dkt. 79-1, at 113.

On November 22, 2016, Zavala was seen by Bonson for complaints of continued back pain. Bonson noted that Zavala's back pain was not an acute injury but ongoing radiculopathy from the lumbar area. Zavala asked about a cortisone injection or other type of injection for long-term pain. Zavala said that he received relief with pain medication and the TENS unit when he could use it. I take Zavala to be saying that the TENS unit was not available to him as often as he would have liked. Bonson gave Zavala another Solu-Medrol injection, more pain medication, ordered a CT scan, and arranged for a consultation with neurosciences for his lumbar radiculopathy.

Zavala's CT scan took place on January 3, 2017. The radiologist reported that the CT scan showed spinal fusion from L4 through S1 "with no obvious complication" and broad-based disc bulges at L2-L3 and L3-L4 causing mild to moderate stenosis of the central canal. Stenosis is a narrowing of the spaces within the spine, which can cause pressure in the nerves and cause pain. The radiologist also stated that Zavala's "hardware appears intact," but that but that "[s]pray artifact from the retained hardware" made it difficult to evaluate parts of

Zavala's back. Dkt. 79-1, at 116. Bonson ordered a neurosurgery consult with Dr. Waddell of the Gundersen Lutheran Medical Center.

Zavala met with McArdle on February 2, 2017, as a follow up to a blood draw a couple of weeks before. Zavala's main concern was his referral to neurosurgery. McArdle noted that Zavala had already been referred, and they discussed probable dates for the referral and what to expect at that visit.

On April 2, 2017, Zavala submitted an HSR requesting a cortisone injection to treat his pain until his visit with neurosurgery. McArdle responded the next day, stating, "The finding of broad-based disc bulges are unlikely to respond to cortisone injection." Dkt. 91-1, at 104. McArdle says that steroid injections rarely help when the CT scan does not reveal either pressure on a nerve or arthropathy, a type of arthritis.

Zavala met with a neurologist, Dr. Waddell, on April 6, 2017. Waddell saw "no acute significant findings" from the CT scan. Waddell said that he had "nothing to offer from a surgical standpoint." But he did recommend the spinal cortisone injection that McArdle had denied days earlier. Waddell also recommended physical therapy and continued management of symptoms with over-the-counter treatments.

Defendant McArdle signed a "prescriber's order" referring Zavala for a steroid injection. But McArdle was not the staff member who would directly schedule an appointment to fulfill the order. WSPF employed a medical program administrative assistant who was responsible for scheduling all off-site appointments with outside providers, corresponding with those providers, and forwarding relevant documents to the providers.

On April 16, 2017, Zavala submitted an HSR asking whether he would receive "proper medical attention" for his bulging discs, and stating that Dr. Waddell failed to treat him.

Dkt. 91-1, at 121–122. Defendant Waterman responded in part by asking Zavala whether he wanted to try a spinal injection. The next day, Zavala submitted another HSR, to which McArdle responded on April 19 that he was referred for steroid injections. There was apparently no follow-though on McArdle's original order. McArdle learned that she needed to submit a more specific order about the referral for it to be scheduled. So on April 19 she submitted a second, more specific order about where Zavala was being referred and the type of treatment ordered.

On April 26, 2017, Zavala submitted an HSR asking about his previous request. On April 28, Waterman responded that he was scheduled for an injection but that DOC staff was waiting for confirmation from the clinic. Waterman also stated that his nurse practitioner (who I take to be McArdle) referred him for physical therapy. The same day, McArdle wrote an order for Zavala to be evaluated for physical therapy for his low back pain.

The physical therapist evaluated Zavala on May 9 and updated his home exercises, but noted that physical therapy had limited success previously and he recommended alternative treatment options.

On May 10, 2017, Zavala submitted an HSR asking about topical pain-relief creams. McArdle responded by ordering Zavala capsaicin cream and lidocaine cream.

On May 28, 2017, Zavala submitted an HSR asking for a second opinion on his back problem; he stated that Dr. Waddell refused to treat him. Defendant Waterman responded, stating that he "will not be getting a second opinion" and that Waddell did not fail to treat him. Dkt. 91-1, at 111. She told him to continue taking over-the-counter medications and using his TENS unit and pain-relief creams, and she stated that he had a scheduled appointment with "Physical Medicine/Rehab. soon." *Id.* at 111–12.

Zavala saw defendant McArdle on May 30, 2017, for his back pain as well as drainage from his right cheek. McArdle prescribed him treatment for his cheek. McArdle noted that Zavala had an upcoming appointment with "Physical Medicine & Rehab," and that Zavala did not ask for further treatment for his back at that appointment.

On June 2, 2017, Zavala submitted an HSR stating that he needed surgery to repair his bulging discs, that he remained in severe pain, and that he began feeling pain in his upper back. He also requested an applicator brush to put cream on his back and for new shoes. A non-defendant nurse examined him, concluded that his vital signs were normal and forwarded his concerns to McArdle. McArdle submitted a response stating that Zavala had an upcoming appointment for an injection, and that if that treatment were ineffective, he would be referred to neurosurgery. McArdle ordered him the applicator brush and new shoes.

On June 17, 2017, Zavala submitted another HSR, stating that he continued to suffer back pain and asking for treatment. The next day a non-defendant nurse saw Zavala and scheduled an advanced-provider appointment. On June 19, McArdle met with Zavala. She recommended Zavala continue his current treatments, yoga, and participation in "guided imagery," which I take to be a form of meditation. McArdle wrote another order referring Zavala for a steroid injection. She also wrote an order for Zavala to receive a "lumbar sacral support" to wear when moving around.

Zavala was scheduled for an appointment at the clinic on June 29. However, when he saw Dr. Ross at this appointment, he did not receive an injection at that time; the clinic considered the meeting to be a consultation. For follow-up, the provider recommended a trial of one lumbar epidural steroid injection for pain. Zavala says that Ross told him that he did

not give him the injection because McArdle did not sign the referral form. McArdle signed another order for spinal steroid injection, and Zavala received the injection on August 23, 2017.

On September 13, 2017, Zavala submitted a request stating that he was still experiencing pain after his injection. Waterman responded by contacting the pain management clinic and they instructed a nurse at the institution to meet with Zavala to discuss his pain issues. About a week later, Zavala saw a non-defendant nurse for follow-up. Zavala said that his pain was the same despite the injection. He also stated that he believed that at least some of his pain was caused by his implanted surgical device having broken. This information was shared with the pain management clinic.

On September 30, outside provider Dr. Miller assessed Zavala with "bulging disc lumber spine," spinal stenosis, foraminal stenosis, and chronic pain. Miller prescribed him a thicker mattress and naproxen 500 milligrams twice a day for pain, explained exercises to him, and ordered an orthopedic surgery consultation. A few days later, Miller canceled the orthopedic surgery consultation and instead referred Zavala to the pain management clinic.

## C. Special Needs Committee

Under Bureau of Health Services Policy and Procedure no. 300:07, WSPF has a process by which an inmate may request "special needs" items or restrictions, such as an extra pillow, a low bunk, medical shoes, or an extra thick mattress. The Special Needs Committee is comprised of staff representatives from various departments around the prison for recommendations regarding the financial, security, and medical aspects of the inmate's request for an accommodation.

Appendix 1 to this policy states the criteria for providing an inmate with a mattress other than the regularly issued one. The Special Needs Committee may give an inmate a thick

mattress only if the inmate (1) has a severe disabling degenerative joint disease; (2) is pregnant; or (3) is recovering from joint replacement. The committee can give an inmate a special "medical" mattress, described as "Air, Gel, Clinitron, or similar," Dkt. 79-2, at 7, if the inmate has bedsores, severe burns, or paraplegia or quadriplegia with skin issues.

Zavala submitted an HSR on February 27, 2017, requesting a "medical" mattress for chronic back pain. The Special Needs Committee in this instance included defendant Sutter from the business office; defendants Winkleski, Kartman, and Kool from the security departments; and defendants Anderson and Waterman from the Health Services Unit.

The committee considered Zavala to be asking for a thick mattress as opposed to a specialized medical one. Bonson reviewed Zavala's medical records and concluded that they showed that he did not have any of the three medical conditions listed in the policy for a thick mattress. On May 11, 2017, the committee denied Zavala's request based on that review.

In July 2018, a Special Needs Committee comprised of many of the same officials denied Zavala an extra thick mattress after they reviewed Dr. Miller's prescription for it, again concluding that Zavala did not meet the medical criteria for one.

**D. Inmate grievances**

When an inmate grievance concerns a medical issue, the institution complaint examiner's decision is reviewed by the nursing coordinator assigned to that institution. Defendant Alsum performed that task at WSPF.

On June 26, 2017, Zavala filed grievance no. WSPF-2017-16308, complaining of ongoing denial of proper medical treatment for his back pain by defendants McArdle and Waterman, particularly the delay in his cortisone injection.

The institution complaint examiner contacted Waterman about Zavala's care. On June 30, 2017, the examiner recommended dismissing the grievance, stating that Zavala met with an outside provider the day before and that an appointment for a cortisone injection had been scheduled.

Alsum, acting as the reviewing authority for the examiner's recommendation, reviewed the information and medical records that her provided to her, and she concluded that Zavala was being appropriately cared for, particularly because he receiving ongoing care at the prison and he was scheduled for outside treatment. She accepted the examiner's recommendation and dismissed the grievance. Zavala appealed the grievance but the appeal was also dismissed.

Zavala had earlier filed another grievance: on June 11, 2017, that was assigned no. WSPF-2017-14882. But the hearing examiner got to it after the '16308 grievance. The examiner rejected the '14882 grievance as "previously addressed" in the resolution of the '16308 grievance. Alsum upheld the rejection.


ANALYSIS

The state defendants and defendant McArdle have each filed motions for summary judgment. To succeed on either motion, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If

the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment should be granted to the moving party. *Celotex*, 477 U.S. at 322.

Zavala brings both Eighth Amendment and Wisconsin-law negligence claims against defendants. The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The parties do not appear to dispute that Zavala's back problems were a serious medical need.

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

### A. Eighth Amendment

#### 1. Defendants McArdle and Waterman

Zavala's complaint was screened by the United States District Court for the Eastern District of Wisconsin before the case was transferred to this court. Taking aside the actions of the Special Needs Committee and defendant Alsum, who acted as a grievance reviewer, the court granted Zavala leave to proceed on claims that "health services staff (in particular, defendants NP McArdle and J. Waterman) either denied his requests or delayed in providing the requested treatment." Dkt. 11, at 3. From the parties' briefing, they appear to agree that Zavala's claims directly about his medical care are limited to defendants McArdle and Waterman. So although defendant Anderson also responded to at least one of Zavala's health service requests, I will consider her as a defendant only on Zavala's claims about the Special Needs Committee.

As for McArdle and Waterman, it is somewhat difficult to pin down which of their actions or inactions Zavala believes violated his rights. He alleges generally that WSPF staff failed to adequately address his pain and refused to follow treatment orders from outside specialists. In addressing the question whether defendants acted with deliberate indifference, I must consider the totality of care that Zavala received, not just individual decisions. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The record shows that WSPF staff provided him with a variety of treatments for his back injury, including analgesic rubs, muscle relaxant, short-term narcotic pain medication and longer-term pain relievers, Solu-Medrol injections, physical therapy, a TENS device, consultations with outside medical providers, diagnostic imaging procedures, and a steroid injection. Still, Zavala would be able to maintain an Eighth Amendment claim if he could show that a particular decision by a defendant was so far outside

the scope of accepted medical practice that one could infer that the decision was not truly based in professional medical judgment. *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996).

Zavala contends that Waterman violated the Eighth Amendment by denying him a second opinion for his care after he was dissatisfied with what he believes was Dr. Waddell's failure to treat him. But Waterman did not violate the Eighth Amendment by denying Zavala's request for a second opinion. Dr. Waddell did not fail to treat Zavala; he prescribed cortisone injections, physical therapy, and continued over-the-counter treatments. Waterman understandably told him to continue with those treatments and the TENS unit, and she pointed out that he had an upcoming appointment with Physical Medicine. It was not deliberate indifference for Waterman to follow the treatment plan laid out by doctors and nurse practitioners.

Zavala also contends that Waterman, as HSU manager, was generally aware of all of his HSRs and could have intervened in his care. But for a defendant to be liable on an Eighth Amendment claims under 42 U.S.C. § 1983, a plaintiff must show that the defendant was personally involved in the violation of the plaintiff's rights. It is not enough to show that Waterman supervised nurses who responded to his other HSRs, because the doctrine of *respondeat superior* does not apply in cases under § 1983.

Zavala contends that both Waterman and McArdle violated his Eighth Amendment rights by delaying his cortisone injection. McArdle first denied Zavala's April 2017 request to order him an injection pending his upcoming off-site appointment. McArdle did not think that an injection would be effective, so she did not order it. Dr. Waddell recommended an injection three days later, which I take Zavala to be saying shows that McArdle must have been

deliberately indifferent to his back pain. It is true that under some circumstances, "[a] jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist." *Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018) (citation omitted). But that isn't what happened here. McArdle denied Zavala's request *before* the specialist came to the opposite conclusion. And given that (1) Zavala was scheduled to see a specialist at the time that McArdle denied his request; and (2) McArdle immediately signed off on the injection after Waddell recommended it, no reasonable jury could conclude that McArdle was deliberately indifferent by deciding not to order the injection before being seen by the specialist.

Even after Waddell ordered the spinal cortisone injection in early April 2017, Zavala did not receive that treatment until late August 2017. It's unclear why it took so long for Zavala to receive the injection. But none of this delay can reasonably be said to be the result of deliberate indifference on McArdle's or Waterman's part. McArdle says that it was not her or Waterman's job to schedule off-site appointments herself. So when McArdle and Waterman responded to Zavala's various HSRs by saying that an injection was either scheduled or was in the process of being worked out, they were not being deliberately indifferent to Zavala's problem; they were reasonably relying on other DOC staff to work out an appointment date with an off-site provider.

When McArdle was confronted with evidence that Zavala had not yet received the injection, she reordered it. About two weeks after her initial order, she learned that she needed to submit a more specific order about the referral for it to be scheduled, so she submitted a second, more specific order. After meeting with Zavala again about two months later, McArdle wrote a third order. Either the second or third orders resulted in an appointment about ten days later. Zavala saw a specialist, Dr. Ross, in late June 2017. For reasons that are unclear,

particularly given that the referral form stated that the issue to be addressed by the appointment was "injection to central canal L2-3, et L 3-4," Dkt. 91-1 at 27, Ross did not perform the injection. Instead, he examined Zavala, concluded that an injection might be effective, and stated that an order for a future injection was placed.

Zavala says that the reason Ross didn't perform the injection was because either McArdle or Waterman failed to sign the referral form going to the outside specialist. The documents the parties provide do not support Zavala's argument because there isn't a "blank" spot in the referrals where a signature is missing, there isn't any evidence that DOC policy required a signature, and Ross didn't mention this in his report. Zavala says that Ross told him that this was the problem, which is inadmissible hearsay. But even if I considered Ross's statement, it wouldn't be enough to show that McArdle or Waterman acted with deliberate indifference. At most it showed that they mistakenly failed to sign a referral.

Two months later, Zavala finally received the injection. I understand Zavala's frustration with the delay in receiving the injection, particularly the appointment with Ross that appears to have accomplished very little. Defendants contend that Zavala cannot win a tort claim regarding the injections because he reported feeling no improvement from the eventual injection he received. I'm not sure that this is the case, because any delay in even an ultimately fruitless treatment frustrates the effort to find something that works. In any event, the fact that it took a little over two months for Zavala to see a specialist—and then another two months to receive the injection—is not enough to support a deliberate indifference claim. Zavala's condition was not considered emergent and some amount of wait time to see a specialist is a customary feature of our health care system. In addition, McArdle and others

continued to provide other types of treatment, so no reasonable jury could conclude that the delay in this one particular type of treatment could support an Eighth Amendment claim.

Zavala also contends that Waterman and McArdle violated his Eighth Amendment rights in two ways regarding the metal surgical device in his back: he says that defendants scheduled him for an MRI despite knowing that he had the device in his back, and that he failed to receive treatment after the device was broken by the MRI or some other cause. But I already denied Zavala's motion to belatedly amend his complaint to include a claim about receiving a potentially dangerous MRI. *See* Dkt. 106. And Zavala's complaint does not include a claim about his damaged surgical device causing him harm. Even if he had raised this claim, he does not provide any evidence that could lead a reasonable jury to infer that the device was actually broken. Zavala says that he saw this on an imaging result, but he simply does not have the expertise to be able to make that conclusion. And the professional medical evidence says otherwise: the doctor interpreting the January 2017 CT scan said that the device "appears intact." Because Zavala fails to present evidence showing a genuine dispute of material fact regarding any of his Eighth Amendment claims against Waterman or McArdle in their actions individually providing Zavala treatment or in addressing his HSRs, I will grant defendants' motion for summary judgment on those claims.

## 2. Special Needs Committee

Zavala brings claims against defendants Waterman, Anderson, Sutter, Winkleski, Kartman, and Kool for their decision as the Special Needs Committee to deny him a thick mattress in May 2017.[3] They were responding to a February 2017 HSR filed by Zavala:

---

[3] Although Zavala asked for a "medical" mattress to help with his pain, the committee considered it as one for a thick mattress as opposed to the type of mattress the DOC calls a "medical mattress." I do not take Zavala to be challenging that aspect of the decision because

Anderson received the HSR and referred it to McArdle, who referred it to the committee. I take defendants to be saying that non-defendant Nurse Practitioner Bonson reviewed Zavala's MRI and CT scans on behalf of the committee to determine whether Zavala fit any of the DOC's "special needs" policy's criteria for providing a thick mattress. Bonson concluded that Zavala had not been diagnosed with severe disabling degenerative joint disease, which is the only malady listed that could possibly match Zavala's reported symptoms. Then the committee, including medical professionals Anderson and Waterman, unanimously voted to deny Zavala the mattress.

In the past I have expressed concern that the Special Needs Committee procedures might violate the Eighth Amendment if the committee countermanded a doctor's prescription or if the security staff on the committee outvoted the medical staff about a medical treatment. *See, e.g.*, *Fields v. DeYoung*, No. 16-cv-405-jdp, 2018 WL 5995487, at *8 (W.D. Wis. Nov. 15, 2018). But that is not what happened here. At the time of Zavala's request, none of his treating providers had prescribed or recommended a thick mattress, and they had prescribed a host of other treatments. The committee could have given him the mattress if he had severe disabling degenerative joint disease, but Waterman and Anderson, working off Bonson's review, concluded that Zavala did not meet the policy standards for a thick mattress. The Eighth Amendment does not entitle Zavala to demand specific care, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and nothing in the committee's decision suggests that they acted with deliberate indifference to Zavala's problem by denying him the mattress, particularly given that various other treatments he was already receiving. Additionally, Sutter, Winkleski, Kartman,

_____

it is undisputed that the "specialized" or "medical" air or gel mattresses were used for accommodating skin conditions like bed sores or burns, not back problems like Zavala's.

and Kool were non-medical professionals who said that they deferred to the medical staff's decision about whether Zavala's condition met the special-needs policy standards. They did not violate the Eighth Amendment by doing so. *See, e.g.*, *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one.").

Zavala contends that he should have received the thick mattress under the terms of the special-needs policy: he states that he indeed had severe disabling degenerative joint disease. But he does not provide any evidence indicating that, he is not qualified to make that determination, and in any event my own cursory research suggests that he is incorrect. He has been diagnosed with bulging discs, not degenerative joint disease, which is also called osteoarthritis. *See* www.uofmhealth.org/conditions-treatments/cmc/arthritis/osteoarthritis. ("Osteoarthritis is sometimes referred to as degenerative arthritis or degenerative joint disease.").

Zavala says that months later, Dr. Miller prescribed him a thick mattress, and that the Special Needs Committee—comprised of many of the same officials—denied him the mattress. But this does not prove that Zavala had a condition that met the special-needs policy. Nothing in Miller's notes suggest that he determined that Zavala had severe disabling degenerative joint disease, or even that he consulted the DOC's policy in considering the thick mattress. And Zavala does not bring separate claims based on the second committee decision: Miller's prescription and the committee decision postdate the filing date of Zavala's complaint. Because Zavala fails to provide evidence that could lead a reasonable jury to conclude that the Special Needs Committee defendants were deliberately indifferent to his back problems when they

denied his request for a thick mattress, I will grant defendants' motion for summary judgment on those Eighth Amendment claims.

### 3. Defendant Alsum

Zavala brings an Eighth Amendment claim against defendant Alsum for failing to intervene in his medical care when she reviewed his grievances. Zavala cannot maintain an Eighth Amendment claim against Alsum merely for ruling against him on his grievances; he needs to set forth facts and evidence raising a reasonable inference that Alsum acted with deliberate indifference toward him. Zavala fails to do so. All the record here shows is that Alsum reviewed the grievance materials and medical records and concluded that Zavala was receiving proper care, much the same way that I determined that McArdle or Waterman did not act with deliberate indifference in treating him. In particular, the grievance examiner had already determined that Zavala had just been seen by an outside provider and that an appointment for a spinal steroid injection had been scheduled. Alsum did not violate the Eighth Amendment by failing to intervene further. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (Claim against complaint examiner fails where prisoner "has not accused [examiner] of refusing to do her job and of leaving the prisoners to face risks that could be averted by faithful implementation of the grievance machinery. He contends, instead, that [examiner] should be held liable because she carried out her job exactly as she was supposed to."). Nor did Alsum violate the Eighth Amendment by upholding the rejection of the other grievance because it was about the same issue as the one she substantively ruled on. So I will grant the state defendants' motion for summary judgment on the Eighth Amendment claim against Alsum.

### B. Wisconsin-law negligence

Zavala also brings Wisconsin-law negligence claims against defendants alongside each of his Eighth Amendment claims. But a federal court generally does not have jurisdiction over a state-law claim unless it is related to a federal claim that is pending in the same case, 28 U.S.C. § 1367, or the plaintiff and defendants are citizens of different states and the amount in controversy is greater than $75,000, 28 U.S.C. § 1332. In this case, I am granting summary judgment for defendants on all of the federal claims, so I decline to exercise jurisdiction over any of Zavala's state-law negligence claims under § 1367. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 499–501 (7th Cir. 1999) ("[I]t is the well established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Zavala does not allege that he and defendants are citizens of different states and nothing in the complaint suggests that they are, so I cannot exercise jurisdiction under § 1332 either. Accordingly, I will dismiss Zavala's state-law claims without prejudice. Zavala may refile them in state court, subject to the applicable Wisconsin statutes of limitations.

ORDER

IT IS ORDERED that:

1. Plaintiff Jimmy Zavala's motions to amend his complaint, Dkt. 94 and Dkt. 130, are DENIED.

2. Plaintiff's renewed request for sanctions regarding alleged perjury by defendants McArdle and Waterman, Dkt. 118, is DENIED.

3. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 127, is DENIED.

4. Defendants' joint motion to stay trial-related deadlines, Dkt. 134, is DENIED as moot.

5. The motion for summary judgment filed by defendants Lori Alsum, Sonya Anderson, Mark Kartman, Brian Kool, Carrie Sutter, Jolinda Waterman, and Daniel Winkleski, Dkt. 76, is GRANTED with respect to plaintiff's federal claims.

6. Defendant Sandra McArdle's motion for summary judgment, Dkt. 87, is GRANTED with respect to plaintiff's federal claims.

7. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

8. The clerk of court is directed to enter judgment accordingly and close this case.

Entered April 23, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge